## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL GRIMES, on behalf of herself
and others similarly situated,

*Plaintiff*

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

*Defendant*

Action No. 1:18-798

## COMPLAINT
## (CLASS ACTION)
## (JURY TRIAL DEMANDED)

NOW COMES Plaintiff, complaining of Defendant, and alleges and says as follows:

### SUMMARY

**Defendant GEICO systematically underpays claims under Medical Payments coverage on North Carolina automobile insurance policies.**

GEICO sells automobile insurance to North Carolina consumers. As part of its sales efforts, GEICO encourages its customers to purchase Medical Payments coverage. Under Medical Payments ("Medpay") coverage, GEICO agrees to pay reasonable and necessary medical and funeral expenses

1

incurred by an insured and caused by a motor vehicle accident. GEICO's insurance policies define reasonable expenses as those expenses which are "consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service."

When a GEICO insured has health insurance, GEICO refuses to pay the full amount of medical expenses the insured's medical providers charged without conducting any review as to whether those charges are reasonable. Rather, GEICO reduces the charges by any discount which accrues to the insured under the insured's separate health insurance plan. Nothing in GEICO's policies allows it to take such a reduction.

Based on this conduct, Plaintiff, a GEICO insured whose Medpay claim was reduced as described above, asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair or deceptive trade practices and insurance bad faith against GEICO. Plaintiff asserts these claims on her own behalf and on behalf of all those similarly situated.

## PARTIES

1.    Plaintiff Crystal Grimes ("Grimes") is a citizen and resident of North Carolina.

2.    Defendant Government Employees Insurance Company ("GEICO") is a corporation organized and existing under the laws of the State

2

of Maryland with its principal place of business in Maryland. Defendant

GEICO's President is William E. Roberts, and his office address is 5260

Western Avenue, Chevy Chase, Maryland, 20815. At all times relevant to this

action, Defendant GEICO has engaged in the business of insurance in the

Middle District of North Carolina, including, but not limited to, selling

insurance policies to individuals in the Middle District of North Carolina.

## **JURISDICTION**

3.     This Court's jurisdiction is invoked pursuant to 28 U.S.C. Section

1332.

4.     Grimes is diverse from GEICO.

5.     Upon information and belief, the amount in controversy,

aggregating the claims of all putative class members, exclusive of interest

and costs, exceeds $5,000,000.

6.     GEICO has applied to the State of North Carolina and has been

accepted by the State of North Carolina to conduct an insurance business in

North Carolina, and GEICO has consented to be subject to the jurisdiction

and laws of North Carolina in connection with insurance policies which it

sells and/or issues in North Carolina.

7.     This action is based on North Carolina personal automobile

insurance policies which GEICO sold and issued to Grimes and to other

North Carolina residents.

8.     As more fully described below, Grimes received medical treatment in North Carolina for injuries sustained in a motor vehicle accident which occurred in North Carolina, and for which insurance benefits were payable by GEICO in North Carolina.

9.     GEICO's communication of its refusal to pay the full benefits owed to Grimes under her below described Policy was sent to North Carolina.

## FACTS

**A.     Grimes's Insurance with GEICO**

10.     Grimes owns a personal automobile insurance policy ("the Grimes Policy" or "the Policy") issued by GEICO having policy number 4008-30-32-00.

11.     The Grimes Policy was in effect on March 23, 2018, which was the date of the highway Accident described below; the relevant policy period began on November 21, 2017 and ended on May 21, 2018.

12.     The Grimes Policy, like all personal automobile policies that GEICO issues in North Carolina, consists of Declarations and Policy Forms.

13.     A true and accurate copy of the Declarations for the Grimes Policy is attached as Exhibit 1 and is incorporated herein as if fully set forth.

14.     A true and accurate copy of all of the Policy Forms for the Grimes Policy is attached as Exhibit 2 and is incorporated herein as if fully set forth.

4

15.     On March 23, 2018, the Grimes Policy included Medical Payments ("Medpay") coverage in the amount of $5,000 per person for each accident.

16.     The Medpay coverage section of the Grimes Policy is contained within pages 6 through 8 of the Policy Forms and is labeled as "Part B – Medical Payments Coverage" (the "Medpay Coverage").

17.     In the Medpay Coverage, GEICO promised to pay reasonable expenses incurred for necessary medical services because of bodily injury caused by an accident and sustained by an insured.

18.     On March 23, 2018, Grimes was an insured under the Medpay Coverage.

19.     In the Medpay Coverage, GEICO provided: "Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service."

20.     Upon information and belief, the language in the Medpay Coverage of all of GEICO's North Carolina personal automobile policies in effect during the Class Period defined below is substantively identical to the language in the Medpay Coverage of the Grimes Policy.

21.     On March 23, 2018, all premiums due for the Grimes Policy, including the premiums for Medpay Coverage, had been paid.

5

22.     On March 23, 2018, all conditions of the Medpay Coverage on the Grimes Policy had been complied with by Grimes.

23.     In connection with the issuance of North Carolina personal auto polices such as the Grimes Policy, GEICO made certain statements designed to induce GEICO's policyholders, such as Grimes, to trust GEICO. Among those statements are:

> a.     "Thank you for continuing to be part of the GEICO family and trusting us to meet your insurance needs";
>
> b.     "We appreciate the opportunity to provide you this valuable coverage";
>
> c.     "We're here for you 24/7, 365 days a year"; and
>
> d.     "We value you as our policyholder."

24.     A true and accurate copy of the document GEICO transmitted to Grimes and which contains the statements listed in paragraph 23 is attached hereto as Exhibit 3 and incorporated herein.

25.     The statement or implication that GEICO treats policyholders as "family" is false.

26.     The statement that GEICO values their policyholders as policyholders is false. In fact, GEICO values its policyholders only as sources of premium dollars.

6

## B. Grimes Injured in Motor Vehicle Accident

27.     On March 23, 2018, Grimes was involved in a motor vehicle collision at the intersection of South Wilmington Street and Chapanoke Road in Raleigh, North Carolina. This collision is referred to below as the "Accident."

28.     Grimes sustained injuries in the Accident.

29.     Grimes received medical treatment for said injuries from several medical providers, including but not limited to WakeMed, Wake Emergency Physicians, PA, and EmergeOrtho.

30.     Said medical treatment was necessary because of bodily injury caused by an accident and sustained by an insured within the meaning of the Medpay Coverage of the Grimes Policy.

31.     Grimes incurred reasonable expenses within the meaning of the Medpay Coverage of the Grimes Policy for said treatment, including, but not limited to, the following:

> a.     WakeMed charged Grimes $1,835.42 for treatment necessitated by the Accident;
>
> b.     Wake Emergency Physicians, PA, charged Grimes $570.00 for treatment necessitated by the Accident; and
>
> c.     Emerge Ortho charged Grimes $2,031.55 for treatment necessitated by the Accident.

7

The above expenses are referred to hereinafter as the "Medical Expenses".

32.     The Medical Expenses are reasonable in that they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

33.     Hence, Grimes incurred Medical Expenses in the amounts detailed in paragraph 31, *supra*, within the meaning and scope of the Medpay Coverage in the Grimes Policy.

**C.     Grimes Submits Expenses to GEICO.**

34.     On or before June 14, 2018, Grimes submitted claims to GEICO for all of the Medical Expenses detailed in paragraph 31, *supra*. Such submission was timely under the Policy.

35.     As of the date of the filing of this Action, Grimes has submitted to GEICO the Medical Expenses detailed in paragraph 31, *supra*, totaling $4,436.97, as well as other expenses which have not yet been paid but which are not, at this stage, relevant to this litigation.

**D.     GEICO Refuses to Pay Amounts Due under Medpay Coverage.**

36.     GEICO conceded that the injuries for which Grimes received the medical treatment causing her to incur the Medical Expenses described in Paragraph 31 were caused by the Accident.

8

37. GEICO conceded the necessity of all of the medical treatment causing her to incur the Medical Expenses described in Paragraph 31.

38. GEICO conceded that none of the Medical Expenses Grimes submitted which are described in Paragraph 31 were subject to any exclusion in the Grimes Policy.

39. Nonetheless, GEICO refused to pay $2,461.70 of the $4,436.97 in Medical Expenses Grimes submitted because of "Health Insurance contractual allowance[s]."

40. A true and accurate copy of GEICO's Explanation of Review of WakeMed's charges to Grimes is attached hereto as Exhibit 4 and is incorporated herein as if fully set forth.

41. A true and accurate copy of GEICO's Explanation of Review of Wake Emergency Physicians, PA's charges to Grimes is attached hereto as Exhibit 5 and is incorporated herein as if fully set forth.

42. A true and accurate copy of GEICO's two Explanations of Review of EmergeOrtho's charges to Grimes are attached hereto as Exhibit 6 and are incorporated herein as if fully set forth.

43. Upon information and belief, GEICO has no contract with any of Grimes's medical providers which allows GEICO to reduce amounts charged by said providers prior to paying Grimes under her Medpay Coverage.

9

44.     GEICO has no right to reduce any of the Medical Expenses incurred by Grimes on account of any adjustment made by any health insurer.

45.     As of the filing of this Action, GEICO owes Grimes an additional $2,461.70 with relation to the above identified Medical Expenses.

46.     GEICO withheld the funds owed to Grimes in contravention of its Medpay Coverage in the Grimes Policy.

47.     GEICO withheld the funds owed to Grimes for the sole purpose of increasing its corporate profits.

48.     GEICO withheld the funds owed to Grimes with complete disregard to its insured's right to proper payment under the Medpay Coverage.

49.     At the time that GEICO withheld the funds owed to Grimes under the Medpay Coverage, it knew that she was entitled to additional payment under the Policy.

## CLASS ACTION ALLEGATIONS

50.     Grimes brings this action on behalf of a Class defined as follows:

    a.     All natural persons

    b.     insured under a GEICO automobile insurance policy issued in North Carolina with a Medpay Coverage provision

10

    c.    who submitted a Medpay claim to GEICO within the 4

          years preceding the filing of this action (the "Class Period")

    d.    where GEICO reduced any charge due to a "Health

          Insurance contractual allowance."

51.    For purposes of Count I, II, and IV, the Class is further limited to the persons whose Medpay claim has been reduced as set forth above in the three years immediately preceding the filing of this action.

52.    The following are excluded from the Class definition:

    a.    Any employee of GEICO;

    b.    Plaintiff's counsel and any employee of any firm appearing

          as Plaintiff's counsel;

    c.    All judges of the United States District Court for the

          Middle District of North Carolina;

    d.    All employees of the United States District Court for the

          Middle District of North Carolina; and

    e.    All persons who properly execute and file a timely request

          for exclusion from the Class.

53.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The Class members are so numerous that joinder of all is impractical. Upon information and belief, GEICO has engaged in the conduct described herein as a general business practice for quite some time. The names and addresses of the Class members

11

are readily accessible and identifiable through the business records maintained by GEICO.

54. **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include:

a. Whether GEICO's Medpay Coverage provision allows for the unilateral reduction of Medpay benefits;

b. Whether GEICO improperly reduced Medpay benefits for "Health Insurance contractual allowance[s]";

c. Whether GEICO's conduct violates the North Carolina Unfair or Deceptive Trade Practices Act; and

d. Whether GEICO's conduct constitutes a bad faith breach of its insurance contracts, justifying imposition of punitive damages.

55. **Typicality** (Fed. R. Civ. P. 23(a)(3)): Grimes's claims are typical of the claims of each Class member and are all based on the same facts and legal theories identified herein. Grimes has the same claims for withheld Medpay benefits that she seeks for herself and for all others similarly situated.

12

56.    **Adequacy** (Fed. R. Civ. P. 23(a)(4)): Grimes is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent. She has retained counsel competent and experienced in complex litigation, and she intends to prosecute this action vigorously. She and her Counsel will fairly and adequately protect the interests of members of the Class. Neither herself nor her Counsel have any interests that might cause them not to vigorously pursue this action. Grimes is aware of her responsibilities to the putative class and has accepted such responsibilities.

57.    **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The Medpay benefits sought by each member have the same basis in the Policy, and the basis of GEICO's denial is the same. Further, each Class member's damages are capable of precise mathematical calculation, i.e., the amount of Medpay benefits GEICO withheld citing a "Health Insurance contractual allowance." However, each Class member's damages are limited, likely a few hundred to a few thousand dollars, such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the members of the Classes individually to redress effectively

13

the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts to require class members to file thousands of individual lawsuits. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by GEICO's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## COUNT 1
## (BREACH OF CONTRACT)

58. The allegations contained in paragraphs 1 through 57, *supra*, are incorporated by reference herein as if fully set forth.

59. GEICO was obligated to deal fairly with Grimes and members of the Class under the implied covenant of good faith and fair dealing contained in individual policies, including the Grimes Policy.

60. The policies that are the subject of this suit, including the Grimes Policy, are first-party insurance contracts between the named insured (e.g., Grimes) and GEICO.

14

61.     Under such insurance policies, including the Grimes Policy, GEICO owed the name insured, and all other persons insured under such policies, various contractual duties, express and implied by operation of law and by usage of trade, including but not limited to duties to:

    a.    Promptly and fairly investigate and evaluate the claim of any insured for Medpay;

    b.    Pay all reasonable expenses incurred by an insured for necessary medical services because of bodily injury caused by an accident and sustained by an insured up to the limits of the Medpay Coverage and not excluded by the Medpay Coverage;

    c.    Make all payments due under the Medpay Coverage promptly;

    d.    To deal fairly with Grimes and members of the Class;

    e.    To deal with Grimes and members of the Class in good faith;

    f.    Fairly construe and represent the facts and law applicable to individual claims and policies, including the Claim and the Grimes Policy; and

15

g.    Comply in all respects with North Carolina's laws on claims

handling, including, but not limited to, N.C. Gen. Stat.

§ 58-63-15.

62.    By July 14, 2018, GEICO knew that Grimes was entitled to an

additional $2,461.70 in benefits under the Medpay Coverage of the Policy.

63.    By refusing to pay the $2,461.70, GEICO has breached both its

express and implied obligations under the Policy.

64.    By refusing to pay the $2,461.70, GEICO has proximately caused

damage to Grimes in that amount.

65.    The aforesaid damages were within the contemplation of the

parties at the time the Policy was issued.

## COUNT II
## (BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING)

66.    The allegations contained in paragraphs 1 through 65 *supra*, are

hereby incorporated by reference as if fully set forth herein.

67.    All contracts, including the Grimes Policy, contain all terms that

are necessarily implied to effect the intention of the parties and which are not

in conflict with the express terms.

68.    As a party to a contract, the Grimes Policy in this case, GEICO is

required to act in good faith and to make reasonable efforts to perform its

obligations under the Policy.

16

69. An insurance company is required to handle the claims of its customers in good faith and the insurer is required to deal fairly with its customers.

70. To comply with the implied covenant of good faith and fair dealing, an insurer, including GEICO in this case, must:

      a.    do nothing to delay or interfere with the insured's rights to receive benefits promised in the Policy;

      b.    give the insured's interests as least as much consideration as it gives its own interests;

      c.    investigate, evaluate, and pay valid claims promptly and without undue delay;

      d.    exercise diligence and good faith in safeguarding the insured's interests;

      e.    fairly and fully inform the insured about the insurer's duties under the Policy;

      f.    conduct unbiased investigations and evaluations;

      g.    refrain from misrepresenting policy provisions; and,

      h.    pay undisputed sums promptly without creating new conditions or terms that are not part of the Policy.

71. GEICO owes Grimes and members of the Class, as insureds, a duty of good faith and fair dealing implicit in the Policy.

17

72.     GEICO breached the implied covenant of good faith and fair dealing under the requisite insurance policies, including the Grimes Policy by, among other things:

> a.     refusing to pay amounts due under the terms of the policies, including the Grimes Policy;
>
> b.     reading additional terms or otherwise attempting to change the terms of the policies after such policies were issued, including the Grimes Policy;
>
> c.     failing to fairly evaluate the claims of Grimes and members of the Class; and,
>
> d.     failing to give the interests of Grimes and members of the Class at least equal consideration to its own interests.

73.     By breaching the implied covenant of good faith and fair dealing, GEICO breached the contractual terms of the individual policies themselves, including the Grimes Policy.

74.     As a proximate result of GEICO's breach of the implied covenant of good faith and fair dealing implicit in the Policy, Grimes has been damaged in that she has not received the $2,461.70 in Medpay Coverage to which she is entitled.

75.     As a proximate result of the GEICO's breach of the implied covenant of good faith and fair dealing implicit in each relevant insurance

policy, Grimes and each member of the Class were injured and sustained damages are a result of GEICO's actions and are entitled to damages to be established at trial.

## COUNT III
## (UNFAIR OR DECEPTIVE TRADE PRACTICES)

76. The allegations contained in paragraphs 1 through 75, *supra,* are hereby incorporated by reference as if fully set forth herein.

77. At all relevant times, GEICO has been engaged in the business of insurance in North Carolina.

78. The business of insurance is in or affecting commerce.

79. Pursuant to North Carolina General Statutes, § 58-63-15(11), GEICO had a statutory duty to engage in fair settlement practices while handling individual Medpay claims, including Grimes's Medpay Claim.

80. Violation of N.C. Gen. Stat. § 58-63-15(11) constitutes a *per se* violation of the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq.*

81. Pursuant to N.C. Gen. Stat.§ 75-1.1, *et seq.*, GEICO had a statutory duty to refrain from using unfair or deceptive acts or practices in or affecting commerce, including the handling of Grimes's claim.

82. GEICO violated (1) its statutory duty to engage in fair settlement practices; and (2) its statutory duty to refrain from using unfair or deceptive

19

acts or practices in or affecting commerce by engaging in the following acts or practices during the course of handling the Medpay claims of Grimes and members of the Class:

a. GEICO misrepresented a pertinent Policy provision when it reduced the amounts due under the Medpay Coverage by a "Health Insurance contractual allowance" to which GEICO was not entitled, in violation of N.C. Gen. Stat. § 58-63-15(11)(a);

b. GEICO failed to act in good faith to attempt to effect prompt, fair, and equitable settlement of individual Medpay claims, including Grimes's Medpay Claim, after liability had become reasonably clear, when the individual policies required GEICO to pay the entire amount of expenses incurred, not an amount reduced for a health insurance allowance to which GEICO was not entitled, in violation of N.C. Gen. Stat. § 58-63-15(11)(f);

c. GEICO has failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for GEICO's refusal to pay the full amount of individual Class members Medpay claims, including Grimes's Medpay Claim, because there is no basis

20

for such refusal in individual insurance policies, including the Grimes Policy. This violates N.C. Gen. Stat. § 58-63-15(11)(n); and,

d. GEICO has compelled Grimes to institute this Action by paying her substantially less than the amount to which she is entitled under the Medpay Coverage, in violation of N.C. Gen. Stat. § 58-63-15(11)(g).

83. Upon information and belief, GEICO has a general business practice of reducing Medpay benefits to North Carolina accident victims who have health insurance by taking "Health Insurance contractual allowance[s]" to which it is not entitled. Upon information and belief, GEICO does this to decrease payout to insureds and to increase its profits.

84. While handling the claims of members of the Class, including Grimes's Claim, GEICO has engaged in conduct which is, in and of itself, unfair and deceptive; such acts constitute substantial aggravating circumstances and violate North Carolina General Statutes § 75-1.1, *et seq*.

85. As a direct, foreseeable and proximate result of GEICO's unfair and deceptive acts and practices, Grimes and members of the Class have sustained actual damages. Individually, Grimes has sustained actual damages in the amount of $2,461.70.

21

86. GEICO is liable to Grimes and members of the Class for treble damages under N.C. Gen. Stat. § 75-16.

87. GEICO has unwarrantedly refused to settle this matter by paying the full amount it owes Grimes and other members of the Class. Therefore, GEICO is liable for attorneys' fees under N.C. Gen. Stat. § 75-16.1.

## COUNT IV
## (AGGRAVATED BAD FAITH/TORTIOUS BREACH OF CONTRACT JUSTIFYING PUNITIVE DAMAGES UNDER CHAPTER 1D OF THE NORTH CAROLINA GENERAL STATUTES)

88. The allegations contained in paragraphs 1 through 87, *supra,* are hereby incorporated by reference as if fully set forth herein.

89. GEICO recognizes that the full amount of its insureds' Medpay claims, including Grimes's Medpay Claim, are valid and should be paid.

90. GEICO refuses to pay the full amount of its insureds' Medpay claims, including Grimes' Medpay Claim, even after recognizing that the claims are valid and should be paid.

91. GEICO acted and failed to act as described in the allegations of Counts II and III above which describe GEICO's breaches of the implied covenant of good faith and fair dealing, and its unfair or deceptive trade practices, and those allegations are hereby incorporated by reference into this paragraph.

92. The aforementioned acts and omissions of GEICO constitute aggravated and outrageous conduct, oppression, caprice, willfulness, and demonstrate, at best, a reckless indifference to the rights of Grimes and members of the Class.

93. GEICO's acts and omissions were committed with malice and willfulness as a conscious and intentional undertaking to harm Grimes and members of the Class and deprive them of their rightful benefits afforded under their insurance policies in order to promote its own financial gain; all in violation of Chapter 1D of the North Carolina General Statutes

94. GEICO's refusal to pay the full amount of the Class members' Medpay claims, including Grimes's Medpay Claim, and the other acts alleged herein have been committed in bad faith; the refusal to pay is not based on an honest disagreement or on an innocent mistake.

95. GEICO's refusal to pay is based on the willful act of GEICO to benefit itself by retaining money that should have already been paid to Grimes and members of the Class.

96. GEICO's acts and omissions constitute bad faith breach of contract and tortious breach of contract.

97. As a direct, foreseeable, and proximate result of GEICO's acts and omissions described above, Grimes and other members of the Class have

23

sustained actual damages. Individually, Grimes has sustained actual damages in the amount of $2,461.70.

98. The acts and omissions of GEICO alleged herein were egregiously wrongful acts, related to the injury for which compensatory damages are sought, which were malicious, willful or wanton conduct such that punitive damages should be imposed against Defendant under North Carolina General Statutes § 1D-1 *et seq.*, in an amount to be awarded by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Grimes respectfully prays the Court:

1. To certify a class action comprised of persons within the definition contained in this Complaint;

2. To enter judgment for Grimes and others similarly situated for compensatory and punitive damages;

3. To treble all damages proximately caused by GEICO's unfair or deceptive trade practices in or affecting commerce;

4. To tax the costs of this Action, including reasonable attorneys' fee pursuant to N.C. Gen. Stat. § 75-16.1;

5. To award pre-and post-judgment interest;

6. Allow a trial by jury on all issues so triable; and,

24

7.     To award such other and further relief as the Court may deem Grimes and others similarly situated entitled.

Respectfully submitted, this the 24th day of September 2018.

/s/ J. David Stradley
N.C. State Bar No. 22340
stradley@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina  27612
Telephone: (919) 844-0400

/s/ Edward H. Maginnis
N.C. State Bar No. 39317
emaginnis@maginnislaw.com
/s/ Karl S. Gwaltney
N.C. State Bar No. 45118
kgwaltney@maginnislaw.com
MAGINNIS LAW, PLLC
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: (919) 480-8526
Fax: (919) 882-8763

*Attorneys for Plaintiff*