IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL GRIMES, on behalf of      )
Herself and others similarly      )
Situated,                         )
                                  )
            Plaintiff,            )
                                  )
        v.                        )     1:18-CV-798
                                  )
GOVERNMENT EMPLOYEES INSURANCE     )
COMPANY,                          )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Crystal Grimes, owner of a personal automobile insurance policy issued by Defendant Government Employees Insurance Company ("GEICO"), alleges that GEICO systematically underpays claims for medical payments coverage on North Carolina automobile insurance policies. (Doc. 1 at 1-2, 4.) Grimes seeks damages, for herself and others similarly situated, based on breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq. ("UDTPA"), and aggravated bad faith/tortious breach of contract in violation of Chapter 1D of the North Carolina General Statutes. (Doc. 1.) Before the court is GEICO's motion to dismiss the complaint and to compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(3), and alternatively to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). (Doc. 12.) The motion is fully briefed and ready for decision. For the reasons set forth below, the motion to dismiss and to compel arbitration pursuant to Rule 12(b)(3) will be DENIED and the motion to dismiss pursuant to Rule 12(b)(6) will be GRANTED.

## I.    BACKGROUND

Grimes owns a personal automobile insurance policy issued by GEICO that includes coverage for medical payments ("MedPay") up to $5,000 per person per accident. (Doc. 1 ¶¶ 10, 15.) Her policy was in effect when she was injured in a car accident. (Id. ¶¶ 11, 15, 27–28.) Grimes received medical treatment for her injuries from several medical providers, including WakeMed, Wake Emergency Physicians, PA, and EmergeOrtho. (Id. ¶ 29.) The gross total charge for her medical treatment was $4,436.97: WakeMed charged Grimes $1,835.42, Wake Emergency Physicians, PA charged her $570, and EmergeOrtho charged her $2,031.55. (Id. ¶¶ 31, 35.) Grimes submitted claims to GEICO for $4,436.97 in medical expenses and sought reimbursement under the MedPay coverage provision. (Id. ¶ 34.)

The MedPay provision states, in relevant part:

INSURING AGREEMENT

We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:

1. Caused by accident; and
2. Sustained by an insured.

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

. . .

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential in achieving maximum medical improvement for the bodily injury sustained in the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the bodily injury sustained.

\*   \*   \*

ARBITRATION

The amount due under this coverage shall be decided by agreement between the insured and us. If there is no agreement, the amount due shall be decided by arbitration upon written request of the insured or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the insured, any assignee of the insured and any person or organization with whom the insured expressly or implied contracts for the rendition of medical services. The arbitrators' decision shall be limited to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being equal only to the reasonable expenses for necessary services. The arbitrators shall not award punitive damages or other noncompensatory damages.

\*   \*   \*

(Doc. 1-2 at 6-8.)

3

GEICO found that Grimes's injuries were caused by the car accident, necessary, and not subject to any exclusions. (Doc. 1 ¶¶ 36–38.)  GEICO also found that Grimes's medical charges had been discounted by the providers in the amount of $2,461.70 because of "health insurance contractual allowances," and GEICO reimbursed Grimes for the difference — $1,975.27.  (Id. ¶¶ 39, 45; see Docs. 1-4, 1-5, 1-6.)

Grimes alleges that GEICO has no right to reduce the medical expenses she incurred "on account of any adjustment made by any health insurer" and that by doing so breached the MedPay coverage in her policy.  (Doc. 1 ¶¶ 44–46.)  In response, GEICO timely requested arbitration (Doc. 13-1), but Grimes refused (Doc. 13-2).

## II. ANALYSIS

### A. Motion to Dismiss for Improper Venue and to Compel Arbitration

Arbitration clauses are a subset of forum-selection clauses, which are enforced in this circuit pursuant to a Rule 12(b)(3) motion to dismiss for improper venue.  Gold Mine Jewelry Shoppes, Inc. v. Lise Aagaard Copenhagen, A/S, 240 F. Supp. 3d 391, 394 (E.D.N.C. 2017) (citing Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 365 n.9 (4th Cir. 2012)).  The court may examine evidence outside the pleadings when considering the motion.  Id.  A plaintiff need only make a prima facie showing of proper venue,

and in assessing whether there has been such a showing the court draws all reasonable inferences in the light most favorable to the plaintiff as the non-moving party. Id.

GEICO argues that the MedPay provision contains a clear and unequivocal arbitration clause that applies to Grimes's claims. (Doc. 13 at 2.) Consequently, it contends, the court should dismiss the case and compel arbitration pursuant to Rule 12(b)(3). (Id.) It also argues that because the arbitration provision does not authorize class arbitration, only Grimes's individual claims are arbitrable. (Id.) Grimes responds that GEICO's arbitration provision is expressly limited to whether expenses are "reasonable" and "necessary," and thus all other issues, including whether they were "incurred," are left for judicial resolution. (Doc. 16 at 3-7.)

When presented with a question as to whether parties are required to arbitrate a dispute, the court must first determine the "gateway dispute" of whether the claims are "arbitrable." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 104 (4th Cir. 2012). Here, the parties do not dispute that the court is the proper forum to determine arbitrability, which reflects the lack of any "clear and unmistakable" policy language requiring that an arbiter make this determination. Peabody, 665 F.3d at 102-03. Thus, the question

is properly before the court.  See Estate of Minter v. Bayview Loan Servicing, LLC, No. 5:17-CV-185, 2018 WL 607230, at *4 (N.D.W. Va. Jan. 29, 2018) ("A district court must 'engage in a limited review to ensure that the dispute is arbitrable — i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" (quoting Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997))).

In the Fourth Circuit, a party can compel arbitration if it establishes (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute.  Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).  Here, only the second element is disputed;[1] specifically, whether the MedPay arbitration provision purports to cover Grimes's complaint.  (See Doc. 13 at

---

[1] The first element is satisfied, as this lawsuit reflects a dispute between the parties.  See Estate of Minter, 2018 WL 607230, at *4.  The third element is met because "insurance policies issued by a foreign corporation to citizens of particular states 'involve commerce' and are subject to the FAA[;]" GEICO is alleged to be a Maryland corporation, which issued Grimes, a North Carolina citizen, an insurance policy.  Duke Univ. v. Nat'l Union Fire Ins. Co., No. 1:08CV854, 2010 WL 456940, at *3 (M.D.N.C. Feb. 4, 2010).  And the fourth element is satisfied because Grimes rejected GEICO's demand to arbitrate.  See Estate of Minter, 2018 WL 607230, at *7.

8; Doc. 16 at 1.)

Neither party disputes that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), applies to the MedPay arbitration clause.[2] See Gold Mine, 240 F. Supp. 3d at 394 (citing Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004)) ("The FAA governs the rights and responsibilities of the parties with respect to an arbitration agreement."). However, they disagree on the nature of its application, and the inquiry turns on the clarity of the arbitration provision.

While the FAA reflects a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Id. at 394–95 (quotation marks omitted) (first quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); and then quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)). Consequently, "[w]hether the parties have agreed to arbitrate a particular

_____

[2] The FAA applies to a written provision to arbitrate in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. "Commerce" is defined broadly under the FAA. Id. § 1. The issuance by GEICO, a foreign corporation, of an insurance policy to Grimes, a citizen of North Carolina, satisfies the FAA's commerce requirement. Duke, 2010 WL 456940, at *3.

dispute is a matter of contract law in which the court should apply ordinary state-law principles that govern the formation of contracts." Id. at 395 (quotation marks omitted) (quoting Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998)); see also Raymond James Fin. Servs., Inc. v. Cary, 709 F.3d 382, 385 (4th Cir. 2013) (noting that arbitration is a matter of consent). As the Fourth Circuit has recognized, therefore, the "'touchstones of arbitrability analysis' are the 'twin pillars' of the parties' 'consent and intent' to arbitrate." Raymond James, 709 F.3d at 385-86 (quoting Peabody, 665 F.3d at 103).

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (brackets omitted) (quoting United Steelworkers, 363 U.S. at 582–83). The presumption of arbitrability "is particularly applicable" where the clause is broad. Id. Thus, the court must resolve any ambiguity regarding the scope of the arbitral issues in favor of arbitration. Moses, 460 U.S. at 24-25; Wachovia Bank Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006). The presumption "applies only when 'a validly formed and enforceable

arbitration agreement is ambiguous about whether it covers the dispute at hand,' not when there remains a question as to whether an agreement even exists between the parties in the first place." Raymond James, 709 F.3d at 386 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010)). Where a party contests the enforceability or applicability of an arbitration agreement to the dispute, "the court must resolve the disagreement." Granite Rock, 561 U.S. at 299–300 (quotation marks omitted).

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). In this case premised on diversity jurisdiction, the parties agree (Doc. 16 at 2; Doc. 13 at 7) that the court applies the law of the forum state. Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 348 (M.D.N.C. 1995) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). "In determining if an agreement to arbitrate exists, North Carolina law instructs 'the court to examine the language of the contract itself for indications of the parties' intent . . . .'" CIP Constr. Co. v. W. Sur. Co., No. 1:18cv58, 2018 WL 3520832, at *5 (quoting State v. Phillip Morris, USA, Inc., 618 S.E.2d 219, 225 (2005)). The court must consider the "contract as a whole," and it "must give the contract's

language its ordinary meaning and presume that the parties intended the plain meaning of the words, absent evidence to the contrary." Id. (first quoting Phillip Morris, 618 S.E.2d at 225; and then citing Anderson v. Anderson, 550 S.E.2d 266, 269-70 (2001)). Additionally, "the court must interpret all terms of the agreement harmoniously and consistently with each other, unless it would be unreasonable to do so." Id. (citing Ray D. Lowder, Inc. v. N.C. State Highway Comm'n, 217 S.E.2d 682, 693 (1975)).

GEICO argues that Grimes's claims fall within the scope of the arbitration clause because they concern the "amount due" under the MedPay coverage, which the arbitration provision states "shall be decided by arbitration upon written request." (Doc. 13 at 8-9 (quoting Doc. 1-2 at 8).) The arbitration provision also defines the "amount due" as "equal only to the reasonable expenses for necessary services." (Doc. 1-2 at 8 (emphasis added).) GEICO acknowledges that "reasonable," "necessary," and "incurred" are three distinct questions for determination. (Doc. 13 at 9 (noting that "[t]he only issue is whether the amount GEICO paid was sufficient to pay for Plaintiff's reasonable, necessary[,] and incurred medical expenses").) But it argues that the policy definitions of "reasonable" and "necessary" subsume the requirement that the expenses be "incurred." GEICO points to the policy definition of "reasonable expenses" as those consistent with "the majority of similar medical providers in the geographical

10

area in which the *expenses were incurred* for the specific medical service." (Doc. 17 at 3 (quoting Doc. 1-2 at 7).) Thus, GEICO contends, the "amount due" includes Plaintiff's "reasonable, necessary[,] and incurred medical expenses," which must be arbitrated. (Doc. 13 at 9; Doc. 17 at 3-4.)

Grimes contends that there are at a minimum three separate inquiries for a factfinder in a MedPay dispute: (1) what expenses were properly incurred, (2) whether those expenses were "reasonable," and (3) whether those expenses were medically "necessary." (Doc. 16 at 3.) She argues that while the arbitration provision contains broad initial language ("the amount due shall be decided by arbitration"), it goes on to specifically constrain the arbitrator's authority by stating:

> The arbitrators' decision shall be limited to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being equal only to the reasonable expenses for necessary services.

(Doc. 1-2 at 8; Doc. 16 at 3.) Thus, she explains, "amount due" means only a determination whether expenses were reasonable and necessary, which she concedes is subject to arbitration. (Doc. 16 at 3-5.) She argues, however, that she did not agree to arbitrate the separate issue as to which expenses were actually "incurred," as well as other necessary prerequisites to payment, such as whether any of the eleven policy exclusions apply. (Id.)

GEICO's arguments would have more force had the insurer not

expressly limited its arbitration provision. While the arbitration provision initially contains a broad grant of authority to the arbitrator ("the amount due [under this coverage] shall be decided by arbitration upon written request of the insured or us"), it expressly limits the definition of "amount due" and constrains the arbitrators' authority with this proviso:

> The arbitrators' decision shall be <u>limited</u> to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being <u>equal only to</u> the reasonable expenses for necessary services.

(Doc. 1-2 at 8 (emphasis added).) This unambiguous language reflects the parties' intent, and the court must give it meaning.

Contrary to GEICO's argument, the reference to "incurred" in the definition of "reasonable" does not reflect a grant of arbitral authority to determine <u>whether</u> expenses were incurred; rather, it serves only as a <u>geographical locator</u> to determine whose medical rates can be used for comparison. GEICO complains that this leads to an anomalous result of having the questions of "reasonable" and "necessary" arbitrated while the question of what expenses were "incurred" resolved by the court. (Doc. 17 at 4.) That may be. But GEICO was master of its policy, and this construction is consistent with the remainder of GEICO's policy. Though an "amount due" may usually be thought of as a final payment owed, it is clear that GEICO intended a narrower definition here. Most notably, the arbitration provision clearly excludes consideration of any of the

eleven exclusions to coverage, as well as whether the expenses were "incurred" within three years of the date of the accident — all prerequisites to payment under the policy.[3]

For these reasons, GEICO's reliance on cases involving broad grants of authority to an arbitrator[4] is misplaced. (See, e.g.,

---

[3] Had GEICO intended for the arbitration provision to broadly cover all disputes related to the "amount due," it could have avoided adding its express limitation on the arbitrators' authority, or used different language to achieve that result. In fact, two other arbitration provisions in other sections of the insurance contract do exactly that: both the Uninsured Motorists Coverage and Combined Uninsured/Under Insured Motorists Coverage arbitration provisions contain broad statements for arbitration. (Doc. 1-2 at 11, 14, 25, 27.) Both provisions state that if GEICO and an insured "do not agree 1. Whether that insured is legally entitled to recover compensatory damages from the owner or operator of an uninsured [or underinsured] motor vehicle; or 2. As to the <u>amount</u> of such compensatory damages; then the insured may demand to settle these disputed issued by arbitration." (<u>Id.</u> (emphasis added).) Unlike the specific restrictions on what the arbitrators' "decision shall be limited to" (<u>id.</u> at 8) in the MedPay arbitration provision, the other two arbitration provisions broadly state that "[t]he arbitrators will resolve the issues" (<u>id.</u> at 11, 14). These broader arbitration provisions bolster the conclusion that the parties' intent, as shown through the plain text of the policy, was to limit the arbitrable questions in the MedPay provision. <u>See Stooksbury v. Ross</u>, No. 3:09-CV-498, 2010 WL 2572109, at *4 (E.D. Tenn. June 18, 2010) (finding that, in part based on the principle of Tennessee law directing "the plain language [to] be viewed in light of the agreement as a whole in a way that does not neutralize other provisions[,]" the second, limited arbitration provision indicated that the arbitration provision was a limited provision meant to address only certain questions).

[4] As Grimes notes in her brief, most of the cases cited by GEICO in support of its argument involved arbitration disputes with broad language. (Doc. 16 at 6–7); <u>see, e.g.</u>, <u>Forshaw Indus., Inc. v. Insurco, Ltd.</u>, 2 F. Supp. 3d 772, 785–86 (W.D.N.C. 2014) ("any dispute or difference"); <u>Duke</u>, 2010 WL 456940, at *1 ("all disputes that may arise between the Insureds and us in relation to this Policy, or for its breach"); <u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 936 (4th Cir. 1999) ("all disputes arising out of employment"); <u>Bailey v. Ford Motor Co.</u>, 780 S.E.2d 920, 922 (N.C. Ct. App. 2015) ("any dispute 'arising out of or relating to' the agreement"); <u>Dillon v. BMO Harris Bank, N.A.</u>, 787 F.3d 707, 714 (4th Cir. 2015) ("any dispute you have with lender or anyone else under this agreement will be resolved by binding

Doc. 17 at 5 (citing <u>Peabody</u>, 665 F.3d at 100 (arbitration provision encompassed "[a]ny dispute alleging a breach" of the underlying agreement)).) GEICO's contractual language is expressly constrained, reflecting the parties' intent not to agree to broader arbitrator authority. <u>CIP</u>, 2018 WL 3520832, at *6 ("In contrast to such broad arbitration clauses, the narrower arbitration clause . . . in this case reflects an intent to limit its scope to [certain] disputes"); <u>cf.</u> <u>Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.</u>, 96 F.3d 88, 93 (4th Cir. 1996) (holding that arbitration clauses including language similar to "arising out of or relating to" cover "every dispute between the parties having a significant relationship to the contract").

Because GEICO specifically limited the arbitrable issues to whether the amount due is "reasonable" and "necessary," the court can say with positive assurance that the parties did not agree to arbitrate Grimes's coverage dispute based on what expenses were "incurred." Therefore, the arbitration provision does not cover this dispute, and the court denies GEICO's 12(b)(3) motion to dismiss and to compel arbitration.

Having found that the determination of what expenses were

---

arbitration"); <u>Benezra v. Zacks Inv. Research, Inc.</u>, No. 1:11-CV-596, 2012 WL 1067559, at *7 ("any dispute between us arising out of, relating to or in connection with this Agreement"); <u>Ellison v. Alexander</u>, 700 S.E.2d 102, 106 (N.C. Ct. App. 2010) ("[a]ll disputes and claims arising in connection with this Agreement"); <u>Gold Mine</u>, 240 F. Supp. 3d at 393–94 ("any dispute arising out of, or in connection with, the Agreement").

"incurred" is not subject to arbitration, the court next considers GEICO's motion to dismiss.

## B.    12(b)(6) Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (quoting Twombly, 550 U.S. at 555). Mere

legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, see Fed. R. Civ. P. 12(d); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004), "the court can consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice' without converting a motion to dismiss into one for summary judgment." Plymouth Cty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013) (quoting Sun Chem. Trading Corp. v. CBP Res., Inc., No. 1:01CV00425, 2004 WL 1777582, at *3 (M.D.N.C. July 29, 2004)). "Courts may consider documents attached to a motion to dismiss 'so long as they are integral to the complaint and authentic.'" Id. (quoting Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)); Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606–07 (4th Cir. 2015).

Grimes has attached several documents to the complaint: (1) declarations for her policy, (2) policy forms, (3) a coverage letter from GEICO, (4) an Explanation of Review for WakeMed Services, Wake Emergency Positions, and EmergeOrtho. (Docs. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6.) Because each is incorporated by

reference in the complaint and GEICO does not challenge their consideration, the court will consider them in deciding the motion.

### 1. Breach of Contract

GEICO moves to dismiss Count I of the complaint, alleging breach of contract, pursuant to Rule 12(b)(6) on the grounds it paid all of Grimes's reasonable expenses incurred for medical expenses under the MedPay provision. (Doc. 13 at 2.) The MedPay provision obliges GEICO to "pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury." (Doc. 1-2 at 6.) "Incurred" is not defined in the policy, and the parties disagree over its meaning. Grimes argues that "incurred" means the full amount of expenses charged by a provider, prior to the application of any health insurance discounts. (Doc. 16 at 11.) GEICO argues that "incurred" means the amount for which an insured is liable. (Doc. 13 at 16–18.)

GEICO urges the court to adopt the definition of "incur" provided by Webster's Dictionary and adopted by the North Carolina Supreme Court in Czarnecki v. Am. Indem. Co., 131 S.E.2d 347, 349 (N.C. 1963): "to meet or fall in with (as an inconvenience); become liable or subject to: bring down upon oneself (incurred large debts to educate his children)." (Doc. 13 at 15–16.) GEICO additionally cites the reasoning of the North Carolina Court of Appeals in Atkins v. Great Am. Ins. Co., 189 S.E.2d 501, 504 (N.C. Ct. App. 1972):

17

The word "incurred" emphasizes the idea of liability and the definition of "incur" is: "To have liabilities (or a liability) thrust upon one by act or operation of law"; a thing for which there exists no obligation to pay, either express or implied, cannot in law constitute an "incurred expense"; a debt or expense has been incurred only when liability attaches.

(Doc. 13 at 16 (brackets omitted) (quoting <u>Atkins</u>, 189 S.E.2d at 504).)

Grimes provides no alternative definition of "incurred" and "has no quarrel with this generic definition" offered by GEICO, though she contends that "this definition must [be] considered with the context of the usage of the word." (Doc. 16 at 14 & n.13.) Thus, both parties accept reliance on North Carolina authorities for this determination.

In <u>Atkins</u>, the North Carolina Court of Appeals held "that expenses are incurred within the medical payment coverage [] when one has paid, or become legally obligated to pay such expenses." <u>Atkins</u>, 189 S.E.2d at 504. The North Carolina Supreme Court reached the same conclusion when determining the definition of "incurred" in <u>Graham v. Reserve Life Ins. Co.</u>, 161 S.E.2d 485, 490 (N.C. 1968):

[T]he general rule seems to be that a hospital-expense policy, in which the insurer agrees to pay "expense actually incurred," will cover expenses for which the insured becomes legally liable. If he never incurs any liability for his hospital bill — as where hospital care is furnished him solely upon the promise of a third party to pay for it or as a matter of right, without charge and without future obligation contingent upon his ability to pay — the policy does not cover the bill.

18

The North Carolina Supreme Court's definition and reasoning are consistent with the "generic definition" containing the phrase "liable to," which Grimes accepts. (Doc. 16 at 14.) Accordingly, the court finds that the plain meaning of the term "incurred," as used in GEICO's policy, is an expense "which one has paid or become legally obligated to pay." Atkins, 189 S.E.2d at 504.

Grimes offers two arguments for the proposition that the use of "incurred" in the GEICO policy alters its ordinary meaning to that of "amount charged." Neither is persuasive.

First, she argues that Rule 414 of the North Carolina Rules of Evidence "establishes that North Carolina views the amount 'actually necessary to satisfy the bill' as different from the 'incurred' amount." (Doc. 16 at 13.) Rule 414 limits evidence to prove past medical expenses to "the amounts actually paid to satisfy the bills that have been satisfied . . . and evidence of the amounts actually necessary to satisfy the bills that have been incurred but not yet satisfied." N.C.R. Evid. 414. Grimes argues that this indicates that "North Carolina views the amount 'actually necessary to satisfy the bill' as different from the 'incurred' amount." (Doc. 16 at 13.) Such an interpretation is strained and unpersuasive. The "amounts actually necessary to satisfy the bills" are the amounts for which one is liable — the same definition of "incurred" on which the parties agree. The "incurred but not yet satisfied" phrase simply indicates amounts the

19

individual is legally obligated to pay but has not yet paid. See
N.C. Pattern Jury Instruction – Civ. 810.04A at n.2 (June 2013)
(noting that Rule 414 "limits medical expenses evidence to amounts
actually paid to satisfy the bill or, if not yet paid, the amount
that would satisfy the bill").

Second, Grimes argues that the GEICO policy "indirectly
indicates that an 'incurred' medical expense is the amount charged
for treatment." (Doc. 16 at 14.) She points to the policy
statement that "expenses are reasonable only if they are consistent
with the usual fees charged by the majority of similar medical
providers in the geographical area in which the expenses were
incurred for the specific medical services." (Id. (brackets and
bold font omitted) (quoting Doc. 1-2 at 7).) She argues that
"[c]harged is a medical term of art which even Geico acknowledges
is the initial amount of a patient's medical debt before any
discounts are later applied" and that "incurred" must mean the
amount initially charged for treatment, prior to any application
of health insurance discounts. (Id.) Grimes provides no citation
for her claim that "charged" is a medical term of art and does not
explain where GEICO agrees with her definition. Even assuming
that "charged" has the meaning Grimes suggests, the separate use
of the term "incurred" in the definition of "reasonable" indicates
that they have different meanings and supports the conclusion that
"incurred" means the amount for which the claimant is liable to

her doctor.  That is, in determining whether a medical expense is "reasonable" under the policy, one compares the amount "incurred" (paid or legally obligated to pay) with the amount "charged" by the majority of similar medical providers in the geographical area in which the expenses were incurred.  (Doc. 1-2 at 7.)

This result is consistent with State Farm Mut. Auto. Ins. Co. v. Bowers, 500 S.E.2d 212 (Va. 2012), upon which GEICO relies. Bowers addressed the meaning of "incurred" in a similar factual scenario, and the Supreme Court of Virginia applied a definition of "incurred" that accords with that used by the North Carolina courts.  In Bowers, the plaintiff had an automobile insurance policy with State Farm and health insurance through Blue Cross/Blue Shield of Virginia ("Blue Cross").  Id. at 212–13.  Bowers's State Farm automobile insurance policy included a medical payments provision materially similar to the one in Grimes's GEICO policy, which defined medical expenses as "all reasonable and necessary expenses for medical . . . services . . . incurred within three years after the date of the accident."  Id. at 212.  Like here, the court was faced with construing the meaning of the term "incurred" used in the medical payments provision of State Farm's automobile insurance policy.  Id. at 214.  The parties also made essentially the same arguments as here: State Farm argued that "incurred" expenses meant the amounts the healthcare providers accepted as full payment for their services, while Bowers argued

it meant the gross amount of the medical bills.  *Id.*  Applying the same definition as the North Carolina Court of Appeals in *Atkins*, the *Bowers* court concluded that "incurred" referred to expenses "one has paid[,] or become legally obligated to pay."  *Id.*  Because Bowers had neither paid nor was legally obligated to pay the amounts written off by the health insurance providers, the court found that the medical expenses he "incurred" were "the amounts that the health-care providers accepted as full payment for their services rendered to him[,]" not any greater amount noted on the bills before application of contractual reductions.  *Id.*

Grimes provides three reasons why *Bowers* should not affect the outcome of this motion. (Doc. 16 at 16.)  None is persuasive. First, she points out that *Bowers* is not binding because it is from Virginia.  (*Id.*)  While of course true, it is nevertheless persuasive.  Second, she argues that there is no evidence that the insurance policy in *Bowers* contained the "charged" language that appears in the MedPay provision, or that Virginia had a rule like North Carolina Rule of Evidence 414.  (*Id.*)  As discussed above, these do not alter the definition of "incurred" and are therefore immaterial distinctions.  Third, Grimes points out that *Bowers* was decided at the summary judgment stage, not on a motion to dismiss. (*Id.*)  However, the record here contains more than adequate information to make this decision.  The allegations of the complaint and the attached "Explanation of Review" documents, as

well as Grimes's briefing, make clear that "[s]he agrees that her medical debt was satisfied at some later time by application of health insurance, including some portion paid and some portion discounted." (Id. at 15.) Grimes concedes that at the time she submitted her claims to GEICO her medical debt was satisfied by application of health insurance, both through discounts and payments. (Id.) This is confirmed by the three Explanation of Review documents attached to the complaint. (Docs. 1-4, 1-5, 1-6.) Each lists a "charge" amount for medical services, a "reduction" amount, and the difference between those two numbers is the amount in the "provider reimburse" column; the total of all "provider reimburse" amounts for each medical service equals the "EOR [Explanation of Review] Check Amount," and the total of the "EOR Check Amount" for each medical provider equals the amount Grimes is seeking to recover from GEICO, $2,461.70. (Doc. 1 ¶¶ 39–42; Doc. 1-4 at 1; Doc. 1-5 at 1; Doc. 1-6 at 1, 5–6.) The "explanation" code provided next to each charge that has a reduction states: "Line(s) reduced by Health Insurance contractual allowance." (Doc. 1-4 at 2; Doc. 1-5 at 2; Doc. 1-6 at 2, 7.) The Explanation of Review documents each state: "This explanation of review reflects our initial review of the provider's charges submitted." (Doc. 1-4 at 2; Doc. 1-5 at 2; Doc. 1-6 at 2, 7.) Grimes admits, moreover, that the amount she seeks to recover is the reduction for "health insurance contractual allowances."

(Doc. 1 ¶ 39; Doc. 16 at 15.) Accordingly, the facts as alleged and shown in the EOR documents attached to and incorporated by reference in the complaint indicate that GEICO agreed to reimburse Grimes for the amounts she incurred, meaning the amount she was legally obligated to pay for the service after application of health insurance. (See Doc. 1 ¶¶ 39-42, 44, 50(d); Doc. 16 at 15; Docs. 1-4, 1-5, 1-6.) Moreover, Grimes does not argue that she owes or has paid the amount of the health care contractual allowance reduction — in fact, her brief states that by providing her health insurance "she simply had a method to pay that included application of a discount." (Doc. 16 at 15.) Accordingly, as pleaded, this claim is materially similar to one the court dismissed in Bowers.

Viewed in the light most favorable to Grimes, the complaint fails to plausibly allege that she has "paid or become legally obligated to pay" the initial charge listed for the medical services prior to the health insurer's reductions. Accordingly, Grimes has failed to state a claim that GEICO has breached the contract. It is noteworthy that there is no compelling practical reason for the contrary result she urges, which smacks of a sharp argument. The point of insurance is to be made whole. Requiring GEICO to pay an insured amounts the insured never paid and would never be responsible for would result in an inequitable windfall to the insured and needlessly increase premiums. See Bowers, 500

S.E.2d at 214.

## 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Grimes alleges that GEICO breached the implied covenant of good faith and fair dealing by refusing to pay amounts due under her automobile policy, reading additional (or changing) terms of the policy after issuance, failing to fairly evaluate her claims, and failing to adequately consider her interests. (Doc. 1 ¶ 72.) She alleges as injury "the $2,461.70 in MedPay Coverage to which she is entitled." (Id. ¶ 74.) GEICO argues that because it paid all reasonably incurred medical expenses under the MedPay provision, it has not breached its implied duty of good faith and fair dealing. (Doc. 13 at 21.) Grimes does not address this claim in her brief.

"In addition to its express terms, a contract contains all terms that are necessarily implied 'to effect the intention of the parties' and which are not in conflict with the express terms[,]" and these implied terms include "the 'basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement.'" Maglione v. Aegis Family Health Ctrs., 607 S.E.2d 286, 291 (N.C. Ct. App. 2005) (first quoting Lane v. Scarborough, 200 S.E.2d 622, 624 (1973); and then quoting Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 253

S.E.2d 625, 627 (1979)). "All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose." Id. "[W]here a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, [courts] treat the former claim as 'part and parcel' of the latter." Cordaro v. Harrington Bank, FSB, 817 S.E.2d 247, 256 (N.C. Ct. App. 2018) (quoting Murray v. Nationwide Mut. Ins. Co., 472 S.E.2d 358, 368 (1996), disc. review denied, 483 S.E.2d 172–73 (1997)); see also Suntrust Bank v. Bryant/Sutphin Props., LLC, 732 S.E.2d 594, 603 ("As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts."), disc. review denied, 735 S.E.2d 180 (2012).

Because the court finds that GEICO has performed its obligations under the contract and paid Grimes the amount she incurred under the MedPay provision, GEICO has not violated the implied covenant of good faith and fair dealing. This claim will therefore be dismissed.

### 3. Unfair and Deceptive Trade Practices Act

Grimes alleges that GEICO had a duty pursuant to North Carolina General Statute § 58-63-15(11) to engage in fair

settlement practices while handling her MedPay claim, that
violation of § 58-63-15(11) constitutes a *per se* violation of the
N.C. UDTPA, and that pursuant to the N.C. UDTPA, GEICO had a duty
to refrain from using unfair or deceptive acts or practices in or
affecting commerce. (Doc. 1 ¶¶ 79–81.) Grimes alleges that GEICO
violated these statutory duties as follows:

> GEICO misrepresented a pertinent Policy provision when
> it reduced the amounts due under the Medpay Coverage by
> a "Health Insurance contractual allowance" to which
> GEICO was not entitled, in violation of N.C. Gen. Stat.
> § 58-63-15(11)(a); GEICO failed to act in good faith to
> attempt to effect prompt, fair, and equitable settlement
> of individual Medpay claims, . . . in violation of N.C.
> Gen. Stat. § 58-63-15(11)(f); GEICO has failed to
> promptly provide a reasonable explanation of the basis
> in the insurance policy in relation to the facts or
> applicable law for GEICO's refusal to pay the full amount
> of . . . Grimes's Medpay Claim, because there is no
> basis for such refusal in . . . the [] Policy[,
> violating] N.C. Gen. Stat. § 58-63-15(11)(n); and, GEICO
> has compelled Grimes to institute this Action by paying
> her substantially less than the amount to which she is
> entitled under the Medpay Coverage, in violation of N.C.
> Gen. Stat. § 58-63-15(11)(g).

(Doc. 1 ¶ 82.) GEICO argues that Grimes has suffered no injury
because her claim is predicated upon her rejected contention that
GEICO should have paid the $2,461.70 in excess of the incurred
expenses. (Doc. 13 at 21.) Grimes's brief does not address this
claim, either.

To establish a violation of the N.C. UDTPA, a plaintiff must
show "(1) [the] defendant committed an unfair or deceptive act or
practice; (2) the action in question was in or affecting commerce;

and (3) that the plaintiff was injured thereby." Bear Hollow, L.L.C. v. Moberk, L.L.C., No. 5:05CV210, 2006 WL 1642126, at *15 (W.D.N.C. June 5, 2006) (quoting First Atl. Mgmt. Corp. v. Dunlea Realty, Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998)). A trade practice is "unfair" if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and a trade practice is "deceptive" if it "possesses the tendency or capacity to mislead, or creates the likelihood of deception." Id. (brackets omitted) (quoting First Atl., 507 S.E.2d at 63). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

GEICO is correct that Grimes fails to allege an injury. The only actual damage she alleges is the $2,461.70 in written-off charges she was never required to pay. (Doc. 1 ¶ 85.) Because GEICO was not contractually required to pay that amount, Grimes has no plausible injury and her unfair and deceptive trade practices claim will be dismissed.

### 4. Aggravated Bad Faith/Tortious Breach of Contract

Count IV of the complaint asserts a claim for "Aggravated Bad Faith/Tortious Breach of Contract Justifying Punitive Damages Under Chapter 1D of the North Carolina General Statutes." (Doc. 1 at 22.) Grimes alleges that GEICO not only failed to comply

with the insurance contract but did so knowingly and in bad faith. (Doc. 1 ¶¶ 91–96.)  This claim is predicated on GEICO's alleged failure to pay her for the "incurred" expenses she claims.  (Id. ¶ 97.)  She seeks punitive damages under North Carolina General Statutes § 1D-1 et seq.  (Id. ¶ 98.)  GEICO argues that because it had no contractual obligation to pay the excess charges for which she was never liable, it did not act in bad faith in refusing to pay them.  (Doc. 13 at 22.)  It additionally argues that Grimes has failed to state a claim for punitive damages because she has suffered no injury and provided no identifiable aggravated tortious act.  (Id.)  Grimes does not address this claim in her brief.

Under North Carolina law, bad faith breach of contract is not a recognized cause of action independent of a claim for breach of contract; rather, bad faith is a circumstance which may justify granting punitive damages for a breach.  Eli Research, Inc. v. United Commc'ns Grp., LLC, 312 F. Supp. 2d 748, 756 & n.6 (M.D.N.C. 2004).  Because the court has dismissed Grimes's breach of contract claim, her claim for bad faith breach necessarily fails.[5]

To the extent the complaint attempts to allege a bad faith refusal to settle a claim, it fails to allege more than a

---

[5] Even if this were not so, the complaint's conclusory allegations that GEICO engaged in "aggravated and outrageous conduct" and acted with "malice and willfulness" (Doc. 1 ¶¶ 92–93) are insufficient to plausibly allege the requisite aggravation for a claim of bad faith breach.  Iqbal, 556 U.S. at 678.

conclusory recitation of the elements of the tort, which is insufficient to survive a motion to dismiss. (Doc. 1 ¶¶ 89-90, 92, 94-95); <u>Iqbal</u>, 556 U.S. at 678. North Carolina law requires allegations (1) that the insurer refused to pay a claim after the insurer recognized the claim as valid; (2) bad faith; and (3) aggravating or outrageous conduct. <u>Barnett v. State Auto Prop. & Cas. Ins. Co.</u>, No. 2:14cv34, 2015 WL 276512, at *3 (W.D.N.C. Jan. 22, 2015). Bad faith means "not based on honest disagreement or innocent mistake," and a plaintiff "may demonstrate aggravating conduct by showing fraud, malice, gross negligence, insult, rudeness, oppression, or reckless and wanton disregard of a plaintiff's rights." <u>Id.</u> Here, the well-pleaded factual allegations demonstrate at best only an honest disagreement as to the validity of the claim – one as to which GEICO was ultimately correct.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that GEICO's motion to dismiss and to compel arbitration pursuant to Rule 12(b)(3) (Doc. 12) is DENIED, and GEICO's alternative motion to dismiss pursuant to Rule 12(b)(6) (Doc. 12) is GRANTED and the complaint is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder<br>
United States District Judge

July 30, 2019